# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CONRAD RUE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6480** |
| **MARLIN GUSMAN, ET AL.** | **SECTION "F" (1)** |

## ORDER AND REASONS

Plaintiff, Conrad Rue, a state inmate, filed this complaint pursuant to 42 U.S.C. § 1983. He named as defendants Sheriff Marlin Gusman, the Orleans Parish Criminal Sheriff's Department, the City of New Orleans, Mark Terral, Samuel Gore, Brenda Hatfield, and Cynthia Sylvain-Lear. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

In this lawsuit, plaintiff challenged the conditions of his confinement within the Orleans Parish Prison system.[2] Specifically, plaintiff claimed:

1. He was housed in overcrowded conditions;

2. The ventilation was inadequate;

3. The plumbing leaked and required constant maintenance;

4. The prison staffing levels were insufficient to provide adequate security;

---

[1] Rec. Doc. 33.

[2] Plaintiff was incarcerated within the Orleans Parish Prison system when he filed this action; however, he was subsequently transferred and is currently incarcerated at the Dixon Correctional Institute in Jackson, Louisiana.

5. Pretrial detainees were housed with convicted inmates;

6. The facilities were unsanitary;

7. The facilities were too loud and had improper lighting;

8. The medical care was inadequate;

9. The legal advisory system and law library were inadequate;

10. Inmates were required to do their own laundry and undergarments were not supplied free of charge;

11. Inmates had insufficient time and space for exercise;

12. The meals were unappetizing and the food service was unsanitary;

13. Incoming inmates were not screened for communicable diseases;

14. Inmates were not offered adequate programs or incentives; and

15. Adequate hygiene supplies were not supplied free of charge.

Gusman, the City of New Orleans, Terral, Gore, Hatfield, and Sylvain-Lear have filed a motions to dismiss pursuant to Fed.R.Civ.P. 12(c) or, alternatively, motions for summary judgment pursuant to Fed.R.Civ.P. 56 with respect to plaintiff's federal civil rights claims.[3] Plaintiff was ordered to file memoranda in opposition to those motions[4] but he has not done so.

## I. Preliminary Matters

Before turning to defendants' motions, the Court will first address a few preliminary matters.

---

[3] Rec. Docs. 44 and 46.

[4] Rec. Docs. 45 and 47.

## A. Improper Defendant

The Court notes that plaintiff has named the Orleans Parish Criminal Sheriff's Office as a defendant in this matter. However, a Louisiana parish sheriff's office is not a legal entity capable of being sued. Cozzo v. Tangipahoa Parish Council–President Government, 279 F.3d 273, 283 (5th Cir. 2002); see also Haywood v. Gusman, Civ. Action No. 06-3517, 2008 WL 516714, at *3 (E.D. La. Feb. 26, 2008); Wetzel v. St. Tammany Parish Jail, 610 F. Supp. 2d 545, 548 (E.D. La. 2009); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988). Accordingly, the claim against that defendant must be dismissed *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) as frivolous and for otherwise failing to state a claim on which relief may be granted.

## B. Improper Relief

### 1. Declaratory and Injunctive Relief

In his complaint, plaintiff includes a prayer for declaratory and injunctive relief. However, since filing the complaint, plaintiff has been transferred from the Orleans Parish Prison system into the custody of the Louisiana Department of Public Safety and Corrections. The United States Fifth Circuit has made clear that such a transfer renders moot any claims for declaratory or injunctive relief with respect the inmate's prior facility. Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001); see also Davis v. Wall, No. 94-41002, 1995 WL 136204, at *2 n.3 (5th Cir. Mar. 9, 1995); McGee v. Camnova, Civ. Action No. 3:08-CV-2062, 2009 WL 35056, at *2 (N.D. Tex. Jan. 2, 2009); Dean v. Corrections Corporation of America, No. 2:05CV31, 2006 WL 2376224, at *2 (N.D. Miss. Aug.

16, 2006); Serrano v. Bowles, No. 3:02-CV-0686, 2003 WL 21448357, at *1 (N.D. Tex. May 16, 2003). Accordingly, plaintiff is not entitled to declaratory or injunctive relief.

## 2. Compensatory Damages

Plaintiff also sought compensatory damages. However, such damages are unavailable to a prisoner unless he suffered a *physical* injury; mere emotional distress is insufficient. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); Herman, 238 F.3d at 665-66. In this case, plaintiff did not allege that he suffered a physical injury caused by the conditions about which he complained and, therefore, he may not recover compensatory damages.[5]

Having disposed of those preliminary matters, the Court will now turn to defendants' motions.

## II. Defendants' Motions

## A. Standards of Review

## 1. Fed.R.Civ.P. 12(c)

The United States Fifth Circuit Court of Appeals has explained: "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." Guidry v. American Public Life Insurance Co., 512 F.3d 177, 180 (5th Cir. 2007) (citations and quotation

---

[5] Of course, § 1997e(e) does not, however, bar plaintiff's requests for punitive and nominal damages. Hutchins v. McDaniels, 512 F.3d 193, 197-98 (5th Cir. 2007).

4

marks omitted). That said, the Court will *not* accept as true "conclusory allegations or unwarranted deductions of fact." Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 313 (5th Cir. 2002) (citation and quotation marks omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." Guidry, 512 F.3d at 180 (5th Cir. 2007) (quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

### 2. Fed.R.Civ.P. 56

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v.

Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

### B. City of New Orleans, Brenda Hatfield, and Cynthia Sylvain-Lear

In their motion, the City of New Orleans, Hatfield, and Sylvain-Lear argue that the claims against them must be dismissed because they have no direct control over the Orleans Parish Prison system. As they note, the responsibility for a Louisiana parish jail is divided between the local

governing authority and the sheriff. Put simply, the governing authority is responsible only to finance and maintain the jail, La.Rev.Stat.Ann. §§ 15:304,[6] 15:702,[7] and 33:4715,[8] while the sheriff is responsible for the day-to-day operation of the jail, La.Rev.Stat.Ann. §§ 15:704[9] and 33:1435.[10] The division of responsibilities between the City of New Orleans and the Orleans Parish Criminal Sheriff was concisely set forth in Broussard v. Foti, Civil Action No. 00-2318, 2001 WL 258055 (E.D. La. Mar. 14, 2001):

> In Louisiana, sheriffs are the final policy makers with respect to the management of jails. See Jones v. St. Tammany Parish Jail, 4 F.Supp.2d 606, 613 (E.D. La. May 8, 1998). Under Louisiana law, the authority of the Orleans Parish Criminal Sheriff is derived from the state Constitution, not from the City of New Orleans. See La. Const. art. 5 § 27. The sheriff's office, not the City, controls the inmates of the jail, the employees of the jail, and the daily management and operation of the jail. See La. R.S. § 33:1435; 15:704; O'Quinn v. Manuel, 773 F.2d 605, 609 (quoting Amiss v. Dumas, 411 So.2d 1137, 1141 (La.App. 1st Cir.), writ denied, 415 So.2d 940 (La. 1982)).
> 
> Under the statutory framework, the responsibility of the City of New Orleans' is to finance and physically maintain the jail. See Griffin v. Foti, 523 So.2d 935, 937 (La.App. 4th Cir. 1988); see also O'Quinn, 773 F.2d at 609. In Louisiana, the

---

[6] La.Rev.Stat.Ann. § 15:304 provides in pertinent part: "All expenses incurred in the different parishes of the state or in the city of New Orleans by ... confinement ... of persons accused or convicted of crimes ... shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be."

[7] La.Rev.Stat.Ann § 15:702 provides in pertinent part: "The governing authority of each parish shall be responsible for the physical maintenance of all parish jails and prisons."

[8] La.Rev.Stat.Ann. § 33:4715 provides in pertinent part: "The police jury of each parish shall provide ... a good and sufficient jail ...."

[9] La.Rev.Stat.Ann. § 15:704 provides in pertinent part: "Each sheriff shall be the keeper of the public jail of his parish ...."

[10] La.Rev.Stat.Ann. § 33:1435(A) provides in pertinent part: "Each sheriff shall be keeper of the public jail of his parish ...."

> legislative scheme dictates that the City of New Orleans bears the obligation of satisfying the expenses of housing prisoners, while the sheriff has the duty of operating the facility. See Amiss, 411 So.2d at 1141. The City has no authority over the operations of the jail or the management of the sheriff's employees. See Jones, 4 F.Supp.2d at 613; O'Quinn, 773 F.2d at 609 (administration of the jail is province of sheriff). In other words, the City's financial obligations do not constitute authority to control how the sheriff fulfills his duties. See O'Quinn, 773 F.2d at 613 (citing Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669, 670 (La. 1981)). Thus, the City's responsibilities are limited to funding and maintaining the jail. See La. R.S. § 15:702.

Broussard, 2001 WL 258055, at *2. Moreover, with respect to the City's obligation to "maintain" the jail, that obligation is one merely to fund, not actually provide, any needed maintenance. Actual provision of the maintenance is the responsibility of the parish sheriff. See Griffin v. Foti, 523 So.2d 935, 938-39 (La. App. 4th Cir.), writ denied, 531 So.2d 272 (La. 1988); see also Gorton v. Ouachita Parish Police Jury, 814 So.2d 95, 104 (La. App. 2d Cir.), writs denied, 823 So.2d 950 (La.) and 823 So.2d 952 (La. 2002).

These defendants contend that the City has complied with its obligation to fund the prison system as set forth in the consent decree in Hamilton v. Morial, Civ. Action No. 69-2443 (E.D. La.), and that there is therefore no basis on which to hold them liable in this civil action. Plaintiff has neither offered any evidence to dispute that contention nor opposed the motion. Accordingly, the motion will be granted.[11]

### C. Sheriff Marlin Gusman, Mark Terral, and Samuel Gore

In their motion, Gusman, Terral, and Gore argue that plaintiff's allegations are insufficient to state a federal claim. This Court agrees.

---

[11] Moreover, in any event, even if these defendants were properly named, plaintiff's underlying allegations are insufficient to state a federal claim for the reasons noted later in this opinion.

Plaintiff challenged the conditions of his pretrial confinement. It is, of course, clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). That said, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loathe to intervene when detainees complain of trivial inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008). For the following reasons, it apparent that plaintiff has demonstrated neither that his complaints concerned anything more than *de minimis* inconveniences which did not implicate his constitutional rights nor that they otherwise rose to the level of a constitutional violation.

Plaintiff's first claim was that the prison was overcrowded. However, the mere fact that prisoners are confined in overcrowded conditions does not in and of itself amount to a constitutional deprivation. See, e.g., Rhodes v. Chapman, 452 U.S. 337, 347-50 (1981); Castillo v. Cameron County, Texas, 238 F.3d 339, 354 (5th Cir. 2001) ("[A]lthough overcrowding may give rise to unconstitutional conditions, overcrowding itself is not per se unconstitutional."); Price v. New Orleans Parish Criminal Sheriff, Civ. Action No. 09-3573, 2009 WL 2139702, at *3 (E.D. La. July 13, 2009); Thompson v. Stalder, Civ. Action No. 06-659, 2008 WL 874138 (M.D. La. April 1, 2008) ("[T]he law is clear that the mere fact that an inmate may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that such a claim,

9

without more, does not violate an inmate's constitutional rights."); Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *3 (E.D. La. July 5, 2007).

Plaintiff next complained that the ventilation was inadequate. However, such conclusory allegations of inadequate ventilation, without more, implicate no federal constitutional right. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 321 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Parker v. Smith, No. 93-5542, 1994 WL 198944, at *2 (5th Cir. May 6, 1994); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *7 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009).

Plaintiff also complained that the plumbing leaked and required constant maintenance. However, the Constitution does not protect inmates from "life's occasional inconveniences," such as plumbing problems. Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982). Moreover, it is clear that "[l]eaky toilets and puddles are unpleasant but not unconstitutional." Smith v. Melvin, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. July 26, 1996) (unpublished); see also Davis, 2010 WL 890980, at *9; Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

Plaintiff next alleged that the prison staffing levels were insufficient to provide adequate security. Those allegations should be construed as a failure-to-protect claim. See, e.g., Cruz v. Owens, Civ. Action No. 86-5325, 1986 WL 13478 (E.D. Pa. Nov. 26, 1986) (claim that inmate was attacked due to "poor security" analyzed as a failure-to-protect claim). It is clear that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both

pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). The United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (citations and internal quotation marks omitted).

In the instant case, plaintiff did not allege that the purportedly inadequate security ever placed *him* in harm's way, that *he* personally was particularly susceptible to being attacked, or that prison officials had been made aware of and were deliberately indifferent to *his* need for protection. Instead, plaintiff offered nothing more than his vague and conclusory allegation that security was inadequate, and it is clear that such allegations do not suffice to state a federal claim. See, e.g., Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Sweat v. Corrections Corporation of America, No. 08-CV0917, 2009 WL 774454, at *2 (W.D. La. Mar. 24, 2009).

Plaintiff also challenged the prison's practice of confining both convicted inmates and pretrial detainees in the same dorm. However, it is not *per se* unconstitutional to house pretrial detainees and convicted inmates together. United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained:

> In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that

11

> [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is 'reasonably related to the *institution's interest in maintaining jail security,*' or *physical facilities do not permit their separation. Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted ....* Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit*.

Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added). Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.

Significantly, the classification of inmates is an administrative function of the prison. Jones, 636 F.2d at 1376. Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of

greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5 (E.D. La. Jan. 17, 2007) (footnote omitted); see also Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *4-5 (E.D. La. Oct. 23, 2009). In the instant case, plaintiff offers no nonconclusory allegations that such housing decisions were made indiscriminately without justification or that the decisions were not reasonably related to the institution's interest in maintaining jail security.

Plaintiff next complained that inmates were forced to live in unsanitary conditions. Admittedly, there is a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). However, the conditions alleged by plaintiff clearly do not rise to that level. The mere fact that his cell was not always as sanitary as he would have liked did not render the conditions unconstitutional. See Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); Wilson v. Lynaugh, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").

Plaintiff also complained that the facilities were too loud and had improper lighting. Regarding the noise, plaintiff alleged that prison was so loud that it caused sleep deprivation. However, he did not allege that the noise was intentionally designed to deprive him of sleep, and

13

his contentions are insufficient to state a constitutional claim. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 322 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Lacy v. Collins, No. 95-20033, 1995 WL 535114, at *4 (5th Cir. Aug. 8, 1995); Honshul v. Foti, No. 94-30723, 1995 WL 153425, at *3 (5th Cir. Mar. 30, 1995). Likewise, plaintiff's allegation that the "lighting is poor" in some facilities is likewise too conclusory to state an actionable claim, and his complaint the lights were kept on around the clock in other facilities fares no better. It has been noted that policies mandating constant illumination are grounded in security concerns and are constitutional. See Chavarria v. Stacks, 102 Fed. App'x 433, 436-37 (5th Cir. 2004); Burns v. Smith, Civ. Action No. 08-0428, 2009 WL 2825322, at *11 (W.D. La. Sept. 2, 2009).

Plaintiff next contended that the medical care at the prison was inadequate. To the extent that plaintiff complained that there was insufficient medical staff, that allegation was purely conclusory, and conclusory allegations are insufficient to state a civil rights claim. Arnaud v. Odom, 870 F.2d 304, 307 (5th Cir. 1989); see also Richards v. Johnson, 115 Fed. App'x 677, 678 (5th Cir. 2004). To the extent that he complained that the care provided was deficient, that complaint also fails. It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). In the instant case, however, plaintiff's only medical complaint was that he wanted a knee brace for exercising. There

14

was no indication that plaintiff suffered from a serious medical need,[12] much less that officials were deliberately indifferent to that need.[13]

Plaintiff also complained that the legal advisory system and law library were inadequate. It is clear that prisoners have a constitutional right of meaningful access to the courts, including access to adequate law libraries or assistance from legally trained personnel needed to file nonfrivolous legal claims challenging their convictions or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 828 (1977); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). However, the Supreme Court in Bounds "did not create an abstract, freestanding right to a law library or legal assistance" in the prison. See Lewis v. Casey, 518 U.S. 343, 351 (1996). Moreover, in any event,

---

[12] "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

[13] The United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

claims alleging violations of the right of access to courts are not cognizable unless the inmate's position as a litigant was prejudiced by the denial of access. See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); McDonald v. Steward, 132 F.3d 225, 230-31 (5th Cir. 1998); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). In the instant case, plaintiff did not allege that he had suffered any prejudice whatsoever from the purportedly inadequate legal services and law library, and it is clear "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. Plaintiff "has not alleged that he was actually denied access to the court or that any pending litigation was prejudiced, and therefore he has not stated a cognizable § 1983 claim." Clark v. Foti, No. 94-30615, 1995 WL 136127, at *2 (5th Cir. Mar. 8, 1995).[14]

Plaintiff next complained that inmates were required to do their own laundry and that undergarments were not supplied free of charge. It is not unconstitutional to require inmates to do

---

[14] Moreover, numerous cases in this Court over the years have established that, although inmates within the Orleans Parish Prison system are not allowed direct access to a law library, they are allowed to request and borrow law books from a central law library. The adequacy of that legal program, including the use of that law book loan system, was fully litigated in Howard v. Foti, No. 82-460 c/w 84-499, and monitored by this Court for many years. In that case, the Court fashioned an order to ensure that the prison law library and legal services program were constitutionally adequate, and it was determined that the Orleans Parish Prison system's law library and legal services program would be constitutionally adequate if the specifications set forth in the Court's order were met. Howard v. Foti, No. 82-460 c/w 84-499, 1989 WL 152715, at *1 (E.D. La. Dec. 14, 1989); see also Francis v. Gusman, Civ. Action No. 05-4065, 2006 WL 1985961, at *4 (E.D. La. June 21, 2006); Griffin v. Foti, Civ. Action No. 03-2670, 2004 WL 1687864, at *2 (E.D. La. July 27, 2004). This Court need not endlessly relitigate the very issue decided in Howard, especially in that plaintiff has not alleged that either the facts or the law have changed since that case was decided. Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010).

their own laundry. See Gates v. Cook, 376 F.3d 323, 342 (5th Cir. 2004); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986); Miller v. Wathen, Civ. No. 7:04-CV-136, 2009 WL 874601, at *2 (N.D. Tex. Apr. 2, 2009). Additionally, the Constitution does not require that inmates be provided with free underwear. Mayer v. Pima County Sheriff Department, No. 92-15584, 1993 WL 230196, at *3 (9th Cir. June 28, 1993).

Plaintiff also complained that inmates had insufficient time and space for exercise. However, an inmate has no constitutional right to out-of-cell exercise if he has enough room to exercise in his cell and suffers no ill effects from the restrictions. See Jackson v. Cain, Civ. Action No. 07-0693, 2009 WL 565718, at *3 (M.D. La. Mar. 4, 2009); Clifford v. Stalder, Civ. Action No. 07-43, 2007 WL 2229566, at *3 (W.D. La. June 4, 2007) (Wilson, M.J.) (adopted by Minaldi, J., on July 31, 2007); Broussard v. Phelps, Civil Action No. 86-2126, 1987 WL 18153, at *3 (E.D. La. Oct. 6, 1987).

Plaintiff next complained that the meals were unappetizing and that the food service was unsanitary. The constitutionality of prison food is not measured by its variety and gastronomic appeal. See, e.g., Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981) (diet consisting "mainly of starch and carbohydrates with few vegetables and fruits," while "likely dull," is not constitutionally inadequate), overruled on other grounds, International Woodworkers of America v. Champion International Corp., 790 F.2d 1174 (5th Cir. 1986); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009). Rather, the Constitution requires only that inmates be provided with well-balanced meals, containing sufficient nutritional value to preserve health. See Green v. Ferrell, 801 F.2d 765, 770-71 (5th Cir. 1986). Moreover,

17

without an allegation of resulting harm, complaints regarding food service practices simply are not of constitutional dimension. Wiley v. Blanco, Civ. Action No. 06-3512, 2007 WL 1747019, at *10 (E.D. La. June 15, 2007); see also Roper v. Strain, Civ. Action No. 10-341, 2010 WL 923151, at *4 (E.D. La. Mar. 8, 2010); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003). Mere negligence on the part of the jail officials in the way they manage the food services does not amount to a constitutional violation. Flowers v. Dent, No. 93-1987, 1994 WL 171707, at *3 (5th Cir. Apr. 29, 1994).

Plaintiff next complained that incoming inmates were not routinely tested for communicable diseases. However, it is clear that no such screening of all inmates is constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir. 2001); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *4 (E.D. La. Oct. 1, 2009); Kennedy v. Gusman, No. 06-5274, 2007 WL 1302554, at *3 (E.D. La. May 2, 2007).

Plaintiff also challenged the jail's failure to offer adequate programs and incentives for inmates. However, no such programs and incentives are constitutionally required. For example, there is no constitutional right to educational or rehabilitative services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *10 (E.D. La. Mar. 8, 2010); Morrison v. Gusman, Civ. Action No. 10-217, 2010 WL 724173, at *6 (E.D. La. Feb. 22, 2010); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); Oglesby v. Gusman, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); Sampson v. Corrections Corporation of America, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D.

La. Mar. 26, 2009); Wilbon v. Gusman, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

Lastly, plaintiff complained that not all types of personal hygiene items were provided for free and, for those which were supplied, the amounts were inadequate. However, the Constitution does not require that free hygiene supplies be provided to non-indigent inmates, and plaintiff did not allege either that such items were unavailable for purchase through the commissary or that he personally had ever been denied requested hygiene items due to lack of funds. Accordingly, he did not state an actionable constitutional claim. See Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *3 n.7 (E.D. La. Nov. 28, 2003); Roach v. Klingman, 412 F.Supp. 521, 526-27 (E.D. Pa. 1976).

### III. State Law Claims

Finally, the Court notes that plaintiff also indicated in the complaint that he was asserting claims under state law. However, in that plaintiff's federal claims are being dismissed, it is appropriate for the Court to decline to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, No. 09-30667, 2010 WL 183490, at *3 (5th Cir. Jan. 20, 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246

(5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").

Accordingly, for all of the foregoing reasons,

**IT IS ORDERED** that defendants' unopposed motions, Rec. Docs. 44 and 46, are **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's federal civil rights claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this eleventh day of May, 2010.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**